Order Filed on November 13, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**BBCK ONE HOLDING CORP.,**<br><br>                         Debtor. | Case No.:     24-13913<br>Chapter:     11, Subchapter V<br>Judge:     John K. Sherwood |
| **BBCK ONE HOLDING CORP.,**<br><br>          Plaintiff,<br><br>    v.<br><br>**WEST COAST MANAGEMENT, LLC, et al.**<br><br>               Defendants. | Adv. Proc. No.: 24-01437<br>Hearing Date:  September 17, 2024 |

### DECISION RE: DEFENDANTS' MOTION TO DISMISS

The relief set forth on the following pages, numbered two (2) through thirteen (13), is hereby **ORDERED**.

**DATED: November 13, 2024**

_____

Honorable John K. Sherwood
United States Bankruptcy Court

## INTRODUCTION

Plaintiff, BBCK One Holding Corp., ("Plaintiff or Debtor") made a $3.2 million capital contribution to Defendant, West Coast Management II, LLC ("West Coast II"), a cannabis company formed in 2017 with the goal of cultivating, harvesting, packaging, and distributing cannabis within the state of California. West Coast II ultimately failed and was forced to sell its assets and distribute the proceeds on a pro rata basis to investors. Plaintiff alleges its capital contribution was misappropriated to various related entities and stakeholders of West Coast II. The primary goal of Plaintiff's bankruptcy filing was to bring litigation pending in Florida, Delaware, and New Jersey over the dissolution of West Coast II to this Court. Defendants have moved to dismiss the complaint under a provision of West Coast II's Operating Agreement requiring these matters to be arbitrated. The Court agrees that the claims against West Coast II and related entities require this Court to abstain in favor of arbitration.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was formed in 2017 to acquire a twenty percent interest in West Coast II. [ECF No. 1 ¶ 21]. The Plaintiff conducts no operations, has no employees, and lists the investment in West Coast II as its only asset. [BK ECF No. 12].[1] The stated purpose of West Coast II, as detailed in Section 2 of its Operating Agreement was to "provide managerial and consultative advice . . . that relate to the growth, harvesting and commercial cultivation of [c]annibis." [ECF 61-1 p. 5 of 20]. One of the first investors in West Coast II was Louis Campisano, through his company S&F Holding, LLC. [ECF No. 60 ¶ 6]. Thereafter,

---

[1] Citations to the main bankruptcy case, 24-13913, will be cited [BK ECF No.].

Page 3
Debtor:           BBCK One Holding Corp.
Case No.:         24-13913; 24-01437
Caption of Order: **ORDER RE: DEFENDANTS' MOTION TO DISMISS**

Campisano maintains that he contacted the members of BBCK who expressed an interest in investing in the cannabis industry. [*Id.* at ¶ 11]. BBCK wired a total of $3.2 million in exchange for a twenty-percent stockholder interest in West Coast II. [ECF No. 1 ¶ 26]. After BBCK's capital contribution was received, the shareholders of West Coast II were: S&F Holding (55%), Tri Star Premier Holding (23%), BBCK (20%), and Mitchell Adballah (2%). [ECF No. 61 ¶ 23].

Campisano received a $150,000 "finder's fee" for the BBCK investment from West Coast II. [ECF No. 60 ¶ 35; ECF No. 41-1 p. 10 of 14]. Campisano, through S&F Holding, also received a $500,000 wire from West Coast II characterized as "S&F Deal Fees" for Campisano to invest in another cannabis project that never materialized. [*Id.*]. Campisano claims that the money was returned to West Coast II. [*Id.*].

Due to a violation of Yolo County California Code, as well as changes in governmental regulations concerning the property utilized to grow cannabis, the business was unsuccessful. [ECF No. 60 ¶ 19; ECF No. 61 ¶ 15]. The manager of West Coast I[2] and II, Howard Helfant, authorized sale of the West Coast assets and distribution to its investors on a pro rata basis. [ECF No. 61 ¶ 16-18]. The assets were sold for $2.4 million, with $1.2 million of the sales proceeds allotted to West Coast I and $1.2 million allotted to West Coast II. [*Id.* at ¶16]. On March 6, 2018, the sum of the $2.4 million sale proceeds were wired to a trust account held by Charles Jaffee, at the law firm Stern, Lavinthal & Frankenberg ("SLF"). [ECF No. 59 ¶ 3]. Helfant authorized SLF to pay $5,000 of the wire to Harris Bricken law

---

[2] West Coast I was a separate company from West Coast II, but it appears that West Coast I and II shared property and had similar assets. [ECF No. 61-6 ¶¶ 4, 11, 12].

Page 4
Debtor:          BBCK One Holding Corp.
Case No.:        24-13913; 24-01437
Caption of Order:**ORDER RE: DEFENDANTS' MOTION TO DISMISS**

firm for legal work relating to permitting for the West Coast companies. [*Id.* at ¶ 5]. Helfant

instructed that the remaining funds ($1,200,000 minus $2,500 in legal fees), be transferred

to S&F Holding and apportioned to the shareholders in West Coast II. [ECF No. 60 ¶¶ 27-

29]. According to Campisano, S&F Holding then paid $850,000 to BBCK, $3,000 to Mitchell

Abdullah, $244,500 to Tri Star, and retained $100,000. [ECF No. 60 ¶ 29]. However, BBCK

contends that payments totaling only $550,000 were returned to it by S&F Holding. [ECF

No. 1 ¶ 37]. West Coast II argues that BBCK was overpaid and was only entitled to 20% of

the $1.2 million sale proceeds, or $239,500, and demands that BBCK return the amount

distributed in excess of its share. [ECF No. 61 ¶ 34].

Plaintiff alleges it was entitled to have the $3.2 million capital contribution that it

invested returned to it and suggests that the issue is best resolved in the bankruptcy court as

opposed to four courts in three states. [ECF No. 1 ¶¶ 52-53]. Specifically, the following

lawsuits were pending when the Debtor's bankruptcy was filed:

| Number | Case Name | Docket Number | Court |
|---|---|---|---|
| 1 | BBCK One Holding v. West Coast II, *et al.* | ESX-L-4322-21 | Superior Court of New Jersey Essex County vicinage Law Division |
| 2 | BBCK One Holding v. West Coast II, *et al.* | Appeal Docket No. A-165-23 | New Jersey Appellate Division |
| 3 | Jeanette Frankenberg v. BBCK One Holding, *et al.* | Case ID: 2023-0974 | Delaware Court of Chancery |
| 4 | Howard Helfant v. BBCK One Holding Corp. | Case ID: 2023-0677 | Delaware Court of Chancery |
| 5 | Stern Lavinthal, et al. v. BBCK, *et al.* | | 11th Judicial Circuit, Miami-Dade, Florida |

Page 5
Debtor:          BBCK One Holding Corp.
Case No.:        24-13913; 24-01437
Caption of Order: **ORDER RE: DEFENDANTS' MOTION TO DISMISS**

Most of this litigation is dormant and presents no burden to the Debtor. In Case 3 in Delaware, no discovery has been exchanged and the case will be voluntarily dismissed by Jeanette Frankenburg. [ECF No. 8-1 ¶ 24]. Case 5 is an action against BBCK in the District Court for Miami Dade County; however, the complaint was never served, and Jeanette Frankenburg will also voluntarily dismiss this case. [ECF No. 8-1 ¶ 25]. Case 3 was filed by Helfant after receiving a discharge in his personal bankruptcy and there is no information regarding the activity in this case. [ECF No. 61-6 ¶ 37].

As for the New Jersey actions, on June 2, 2021, Plaintiff filed a complaint in New Jersey Superior Court naming West Coast II and related entities as defendants. [ECF No. 7-2 ¶ 12]. The case was later removed to Federal Court, and subsequently remanded back to Superior Court. [*Id.*]. While the action was pending, on March 3, 2023, West Coast II filed a demand for arbitration in Palm Beach County in accordance with the company's Operating Agreement ("Arbitration 1"). [ECF No. 7-6 p. 2 of 3].   Section 10.5 of the Operating Agreement states:

> Any controversy or claim arising out of or that relate to this Limited Liability Operating Agreement or the operation of the LLC that cannot be resolved by the Members, the controversy or claim shall be submitted for Arbitration in Palm Beach County Florida to be settled under the rules of the American Arbitration Association in effect, if filed within the applicable statute of limitation period. A judgment on the award may be entered and enforced by any court of competent jurisdiction.

[ECF No. 61-1 p. 17 of 20 (emphasis added)].

On August 8, 2023, the Superior Court granted Defendants' motion to compel Plaintiff to arbitrate its claims against Defendants pursuant to Section 10.5 of the Operating Agreement. [ECF No. 7-5]. The Superior Court rejected BBCK's argument that the

Operating Agreement was not enforceable against it because it was not signed, finding the Operating Agreement specified that Delaware law would control, which does not require a signature for the agreement to be enforceable. [ECF No. 8-5 p. 29-30 of 36]. Moreover, the Superior Court determined BBCK's assent to the Operating Agreement was also shown by an additional $2.2 million capital contribution by BBCK to West Coast II after receiving a copy of the agreement. [ECF No. 8-5 p. 30-31 of 36]. On September 22, 2023, Plaintiff appealed the Superior Court decision. [ECF No. 8-6 p. 2 of 8].

In the interim, Arbitration 1 in Palm Beach continued and was scheduled for a final hearing on April 17-19, 2024. [ECF No. 7-2 p. 7 of 9]. On November 30, 2023, Plaintiff filed and served a demand for arbitration on related entities ("Arbitration 2"), in Miami Dade County, Florida, six months after the filing of Arbitration 1. [ECF No. 7-9 p. 2 of 31]. An arbitrator was selected in Arbitration 2, and a preliminary hearing date was set for March 28, 2024. [ECF No. 8-1 ¶ 23]. On the day of the preliminary hearing, BBCK informed Defendants that its attorney had withdrawn and requested a thirty-day adjournment. [*Id.*].

On April 17, 2024, the proposed date for the final hearing in Arbitration 1, and prior to the end of the thirty-day adjournment Plaintiff requested in Arbitration 2, Plaintiff filed this Chapter 11 case. [ECF No. 1 ¶ 51]. Plaintiff's pending appeal of the Superior Court decision has been stayed by this Court under 11 U.S.C. § 105(a). [BK ECF No. 48].

On May 28, 2024, Plaintiff filed this adversary proceeding against West Coast II and various related entities. [ECF No. 1]. The complaint requested the following relief: turnover of property of the estate under 11 U.S.C. § 542, imposition of a constructive trust, negligence, and other common law remedies, requesting the return of capital Plaintiff invested in West

Coast II. [*Id.*]. In response to Plaintiff's adversary proceeding, various Defendants filed motions to dismiss both the Chapter 11 case and this adversary proceeding. Certain Defendants also sought relief from the automatic stay to pursue their claims against the Debtor. [ECF Nos. 7, 8, 11, 12, 13, 23, 24, and 27].

On August 13, 2024, this Court heard argument on the motions to dismiss Plaintiff's adversary proceeding and bankruptcy case. The Court ordered Defendants to submit affidavits regarding the sale of assets and dissolution of West Coast II, as well as the distribution of proceeds from the sale of West Coast II assets. Such affidavits have been submitted and the matter is ready for decision. [ECF Nos. 59-64].

## **ANALYSIS**

### I.      The Issues in This Matter are Non-Core

Under 28 U.S.C. § 157, bankruptcy judges are empowered to decide core proceedings, those cases arising under Title 11, proceedings arising under Title 11, and proceedings arising in a case under Title 11, including matters concerning the administration of the estate. "[A] proceeding is core [1] if it invokes a substantive right provided by Title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996). Non-core proceedings are much broader and include proceedings that are not core but are "related to" a bankruptcy case. *Pacor v. Higgins*, 743 F.2d 987, 994 (3d Cir. 1984).

The Third Circuit in *Pacor v. Higgins*, established the test for "related to" jurisdiction of the bankruptcy court stating, "[a]n action is related to bankruptcy if the outcome could alter

the debtor's rights, liabilities, options, or freedom or action (either positively or negatively)." *Id.* For purposes of core versus non-core, the Third Circuit instructs that a claim for pre-petition contract damages is non-core, even if the claim falls within the catch-all provisions of being a proceeding which affects the liquidation of estate assets or being a matter concerning the administration of the estate. *Beard v. Braunstein*, 914 F.2d 434, 443-44 (3d Cir. 1990).

Plaintiff's complaint presents only one of nine counts that is arguably core, count one requesting turnover of property of the estate under 11 U.S.C. § 542. [ECF No. 1 ¶ 65]. But even this count is probably better described as a pre-petition dispute for breach of contract which is a non-core matter.

Plaintiff has not invoked any substantive right provided under Chapter 11 as the turnover count is duplicative of the state causes of actions pled in the complaint, and this proceeding could not arise only in the context of bankruptcy. *See In re Guild & Gallery Plus, Inc.*, 72 F.3d at 1178. Thus, it is likely that the complaint pleads no claims against the Defendants that are within this Court's core jurisdiction.

## II.    The Arbitration Agreement is Enforceable

As long as a Court is satisfied that the making of the arbitration agreement is a nonissue, "a federal court is required to direct the parties to proceed with arbitration" under Section 4 of the United States Arbitration Act. *Stateside Machinery Co., Ltd. V. Alperin*, 591 F.2d 234, 238 (3d Cir. 1979). And once it is determined that a valid arbitration agreement exists and the dispute falls within the agreement's scope, the Court "must refer the matter to arbitration

Page 9
Debtor:          BBCK One Holding Corp.
Case No.:        24-13913; 24-01437
Caption of Order: **ORDER RE: DEFENDANTS' MOTION TO DISMISS**

without considering the merits of the dispute." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990) (citations omitted). This presumption in favor of arbitration operates unless it can be said with "positive assurance" that the arbitration clause does not cover the dispute. *Id.* Additionally, the United States Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Moreover, "[b]ankruptcy courts generally do not have discretion to refuse to compel arbitration of "non-core" bankruptcy matters or matters that are simply "related to" bankruptcy cases," and "the presumption in favor or arbitration usually trumps the lesser interest of bankruptcy courts in adjudicating non-core proceedings." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006). Even when a matter is core, while the bankruptcy court does have some "discretion to deny enforcement of the arbitration clause," the court "must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and . . . should enforce such clause unless that effect would seriously jeopardize the objectives of the [Bankruptcy] Code." *In re Am. Classic Voyages, Co.*, 298 B.R. 222, 226 (D. Del. 2003) (quoting *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3d Cir. 1989)).

In *Hays & Co.* the Third Circuit distinguished between core and non-core proceedings, concluding that a Chapter 11 trustee, who objected to arbitration was bound by a pre-petition arbitration contract. 885 F.2d at 1153-54. Specifically, the *Hays* Court stated, "[w]e see no reason to make an exception for arbitration agreements to the general rule binding trustees to pre-petition non-executory contracts, especially in face of the strong federal policy

favoring arbitration, and the Arbitration Act, which puts arbitration agreements on the same footing as other contracts." *Id.* (internal citations omitted); *see also In re MicroBilt Corp.*, 484 B.R. 56, 63 (Bankr. D.N.J. 2012)(finding an arbitration provision in a pre-petition sales agreement enforceable because "the mere fact that claims [for violations of the automatic stay] ar[o]se under the Bankruptcy Code d[id] not preclude application of [an] arbitration mandate").

Plaintiff seeks to relitigate whether the arbitration clause in the Operating Agreement is enforceable. During the August 13, 2024 hearing on Defendants' motions to dismiss, Plaintiff argued it was not bound by the Operating Agreement because it was never signed. As set forth above, this issue was previously argued before the Superior Court which entered an order enforcing the arbitration clause. Plaintiff appealed the Superior Court's decision, and the appeal was pending when this bankruptcy case was filed. Though the appeal was temporarily stayed by the order dated May 29, 2024 (BK ECF No. 48), this Court is not inclined to second guess the Law Division's decision enforcing the arbitration clause. If that decision was wrong, the Appellate Division is the proper court to consider the Debtor's arguments.

### III.    Abstention is Warranted

As the Court has decided that it will not relitigate whether the arbitration clause in the Operating Agreement is enforceable, and the parties are engaged in an arbitration proceeding, this Court must abstain. The decision whether to abstain in within the sound discretion of the court. *In re Strano*, 248 B.R. 493, 503 (Bankr. D.N.J. 2000); *In re Asousa P'ship*, 264 B.R. 376, 391 (Bankr. E.D. Pa. 2001). Abstention in the bankruptcy court is governed by 28 U.S.C.

§ 1334 and 11 U.S.C. § 305(a), which confer discretion upon bankruptcy courts to dismiss or suspend an action should such decision better the interests of the parties. *In re A & D Care, Inc.*, 90 B.R. 138, 141 (Bankr. W.D. Pa. 1988). However, under 28 U.S.C. § 1334(c)(2), abstention is mandatory:

> if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006).

As discussed above, Plaintiff's causes of action in this case are non-core, state law causes of action, "related to" the case under Title 11. Plaintiff's reliance on the turnover count under Section 542 of the Bankruptcy Code is not enough to convert this adversary proceeding into a core matter because the claim originates from a pre-petition contract governed by state law. But for Plaintiff's bankruptcy, this Court would not have jurisdiction to hear pre-petition state law claims. Moreover, Plaintiff has previously commenced an action in the State Court which has been referred to arbitration, and Plaintiff's claims can be timely adjudicated in these forums.

The Superior Court previously upheld the Operating Agreement's arbitration clause and Plaintiff currently has an appeal pending in the Appellate Division. Upon dismissal of Plaintiff's bankruptcy, it can pursue its appeal and, if successful, have the matter further adjudicated in State Court. There are also two ongoing arbitrations, Arbitration 1 in Palm Beach was stayed by Plaintiff's bankruptcy petition. Plaintiff can promptly arbitrate its

Page 12
Debtor:          BBCK One Holding Corp.
Case No.:        24-13913; 24-01437
Caption of Order: **ORDER RE: DEFENDANTS' MOTION TO DISMISS**

claims in Arbitration 1 in Palm Beach after the bankruptcy is dismissed. In Arbitration 2, filed in Miami Dade County instead of Palm Beach County, an arbitrator was selected, and a preliminary hearing date was scheduled just prior to Plaintiff's petition. [ECF No. 8-1 ¶ 23]. The Court does not know why Arbitration 2 was commenced, but the parties, the arbitrators and, if necessary, the courts can sort this out.

The Court finds that the factors set out under 28 U.S.C. § 1334(c)(2) require the Court to abstain. In doing so, the Court reiterates that Plaintiff's complaints regarding the morass of litigation in three states were overstated. At this point, the active litigation includes Plaintiff's appeal in the New Jersey State Court, the two arbitrations in Florida, and one case in the Delaware Chancery Court brought by Helfant who is not a party to this adversary proceeding.

The Court finally notes that at the conclusion of the August 13, 2024 hearing, it ordered Defendants to submit declarations detailing how much S&F Holding received from the liquidation of West Coast II, why an interim agreement[3] between the parties was not completed, and how the remainder of the liquidation assets were distributed. The Court directed the Defendants to provide these declarations in response to the Debtor's complaints about the Defendants' lack of transparency in these areas. In the Court's view, additional disclosures might facilitate a global settlement of the issues before the matter was sent back to arbitration. While the declarations were submitted in response to the Court's order, the

---

[3] A document entitled Interim Agreement was presented to the arbitrator in Arbitration 1 purporting to show that a $4.75 million accord was entered into for any claims S&F Holding and BBCK held against Helfant. According to the managing member of West Coast II, the Interim Agreement was not executed in accordance with the Operating Agreement as was invalid. [ECF No. 61 ¶¶ 9-11].

Page 13
Debtor:            BBCK One Holding Corp.
Case No.:         24-13913; 24-01437
Caption of Order: **ORDER RE: DEFENDANTS' MOTION TO DISMISS**

---

Debtor complains that they were intentionally vague, not true accountings, and further evidence of the Defendants' bad faith litigation tactics. [ECF No. 65 p. 2]. The Debtor may have some valid grievances, but this Court cannot resolve all of them to the Debtor's satisfaction without conducting additional hearings on the merits of the Defendants' responses to the Debtor's claims. This was never the Court's intent. It trusts that the Debtor will have a full opportunity to present its arguments at the arbitration proceeding.

<u>Conclusion</u>

For the reasons stated above, Defendants' motions to dismiss the adversary complaint are granted. As the Debtor's bankruptcy case is completely dependent on the success of this adversary proceeding, the Court dismisses the bankruptcy case as a whole.[4] Since the bankruptcy case is being dismissed, the Court will lift the stay on Plaintiff's pending appeal in the State Court to allow Plaintiff to pursue its appeal. [BK ECF No. 48]

---

[4] Defendants assert that Plaintiff cannot be a debtor under Chapter 11 as a proposed plan would be in violation of Section 1129(a)(3) of the Code, requiring that a plan be proposed in good faith "and not by any means forbidden by law." [ECF No. 7 ¶ 1]. We note that other Courts have barred businesses involved in the production of marijuana from being a debtor, concluding that the enterprise is illegal under the Controlled Substances Act [(CSA)], 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 812(c). There is, however, disagreement between federal courts about the extent to which the bar would apply to a business that is removed from the actual production of marijuana. *See In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 803 (Bankr. D. Colo. 2012)(dismissing a debtor's Chapter 11 case where the debtor derived 25% of its income from renting a warehouse to a marijuana growing operation); *but see In re Cook Investments NW*, 922 F.3d 1031 (9th Cir. 2019)(finding a debtor that leased property to a marijuana business could be a Chapter 11 debtor because it was possible for the debtor to propose a plan that did not rely on income from illegal activities). This Court declines to decide the split in law in this case and dismisses instead for the reasons stated above.